IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

ROBERT H. HINDMAN                                                    PLAINTIFF

vs.                                    Civil No. 04-1080

JO ANNE B. BARNHART,
Commissioner, Social Security Administration                        DEFENDANT

## MEMORANDUM OPINION

### Factual and Procedural Background:

Robert H. Hindman (hereinafter "Plaintiff"), has appealed the final decision of the

Commissioner of the Social Security Administration (hereinafter "Commissioner"), denying his

claims for a period of disability and disability insurance benefits (hereinafter "DIB"), pursuant

to *§§ 216(i) and 223* of Title II of the Social Security Act (hereinafter "the Act"), *42 U.S.C. §§*

*416(i) and 423.* In this judicial review, the Court must determine whether there is substantial

evidence in the administrative record to support the Commissioner's decision. *42 U.S.C. §*

*405(g).*

Both parties have filed appeal briefs (Doc. #4 & 5). The history of the administrative

proceedings is contained in the respective appeal briefs and will not be recounted herein, except

as is necessary.

Plaintiff alleges that he is disabled due to: failed back syndrome (lumbar): chronic pain

syndrome; history of right knee surgery; history of lumbar back surgery; constant pain with

strong pain medications; L5-S1 disc herniation with annular tear and leakage with moderate to

severe left foraminal narrowing; radicular pain in the left hip, leg, ankles and toes; possible left

carpal tunnel syndrome; L4-5 eccentric disc degeneration in addition to annular tear and leakage

with severe foraminal stenosis; anxiety and depression; failed epidural steroid injections; failed nerve block procedure; numbness; muscle spasms; and pain. The issue before this Court is whether the decision of the Commissioner is supported by substantial record evidence. The Plaintiff asserts that the Administrative Law Judge (hereinafter "ALJ"), erred in rendering a decision finding Plaintiff not disabled (Doc. #1 & 4).

Despite Plaintiff's assertion that he was and remains a citizen and resident of Camden, Arkansas (Doc. #4, p. 4-5), the Plaintiff's administrative hearing was conducted in Wichita, Kansas, on February 2, 2004 (T. 257-299), after which the ALJ[1] issued his written decision, dated March 24, 200[4][2] (T. 22-30).

On May 6, 2004, Plaintiff filed a request for review by the Appeals Council (T. 8). On July 9, 2004, the Appeals Council denied Plaintiff's request for review, thereby making the decision of the ALJ the final decision of the Commissioner (T. 5-7). From that decision, Plaintiff appeals (Doc. #1).

Upon appeal to the United States District Court for the Western District of Arkansas, this is matter is before the undersigned by virtue of the Order of Reference of the Honorable Harry F. Barnes, United States District Judge, and based upon the consent of the parties (Doc. #2).

**Relevant Law**:

Our role on review is to determine whether the Commissioner's findings are supported

---

[1]Administrative Law Judge, Michael R. Dayton, presided over the hearing and issued the adverse decision (T. 257, 30).

[2]The date was originally stamped "March 24, 2003" in error (T. 30). However, the date was corrected at to reflect "March 24, 2004" (T. 19).

by substantial evidence on the record as a whole.  *See Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000); see also Craig v. Apfel  212 F.3d 433, 435-436 (8th Cir. 2000).*  Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion.  *See Haggard v. Apfel, 175 F.3d 591, 594 (8th Cir. 1999).*  In considering  whether existing evidence is substantial, we consider evidence that detracts from the Commissioner's decision as well as evidence that supports it.  *See Prosch, 201 F.3d at 1012.*  We may not reverse the Commissioner's decision merely because substantial evidence exists in the record that would have supported a contrary outcome.  *See id.;  Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).*  Even if this Court might have weighed the evidence differently, the decision of the ALJ may not be reversed if there is enough evidence in the record to support the decision.  *Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir. 1992).*

The Commissioner has established, by regulation, a five-step sequential evaluation for determining whether an individual is disabled.

The first step involves a determination of whether the claimant is involved in substantial gainful activity.  *20 C.F.R. § 416.920(b).*  If the claimant is so involved, benefits are denied; if not, the evaluation goes to the next step.

Step two involves a determination, based solely on the medical evidence, of whether claimant has a severe impairment or combination of impairments.  *Id., § 416.920(c); see 20 C.F.R. § 416.926.*  If not, benefits are denied; if so, the evaluation proceeds to the next step.

The third step involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling.  *Id., § 416.920(d).*  If so, benefits are awarded; if not, the evaluation continues.

AO72A
(Rev. 8/82)

Step four involves a determination of whether the claimant has sufficient residual functional capacity, despite the impairment(s), to perform past work. *Id., § 416.920(e)*. If so, benefits are denied; if not, the evaluation continues.

The fifth step involves a determination of whether the claimant is able to perform other substantial and gainful work within the economy, given the claimant's age, education and work experience. *Id., § 404.920(f)*. If so, benefits are denied; if not, benefits are awarded.

In addition, whenever adult claimants allege mental impairment, the application of a special technique must be followed at each level of the administrative review process. See *20 C.F.R. § 416.920a(a)*.

The Commissioner is then charged with rating the degree of functional limitation, and applying the technique to evaluate mental impairments. See *20 C.F.R. § 416.920a(d)*. Application of the technique must be documented by the Commissioner at the ALJ hearing and Appeals Council levels. See *20 C.F.R. § 416.920a(e)*.

**<u>Discussion:</u>**

The record reflects that Plaintiff filed his application for DIB benefits on November 5, 2001 (T. 68-70). Plaintiff's application alleges an onset date of disability of January 11, 2001 (T. 68). For purposes of Plaintiff's claim for DIB benefits, the relevant time period begins on the alleged date of onset of disability, January 11, 2001 (T. 68), and ends with the date of the ALJ's decision, March 24, 2004 (T. 22-30).

On appeal, Plaintiff argues that the ALJ erred by: rendering a decision not supported by substantial evidence: determining the Plaintiff maintained the residual functional capacity to perform the full range of sedentary work: failing to properly consider the extent and effect of

-4-

Plaintiff's use of prescribed narcotic medication; posing an improper hypothetical question to the VE; and, failing to consider objective medical findings (Doc. #4). Two issues raised by Plaintiff are of particular concern to the undersigned. The administrative record contains voluminous medical records which reflect that Plaintiff was prescribed several potent narcotic pain medications as well as two objective medical tests which evidence significant injury to Plaintiff's lumbar spine. Yet, the ALJ failed to discuss the narcotic medications or the objective medical tests when rendering his decision.

In determining whether the ALJ properly disregarded Plaintiff's subjective complaints of pain, the Court must determine if the ALJ properly followed the requirements of *Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984)* (subsequent history omitted)*,* in evaluating her pain and credibility.

> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1. the claimant's daily activities;
> 2. the duration, frequency and intensity of the pain;
> 3. precipitating and aggravating factors;
> 4. dosage, effectiveness and side effects of medication;
> 5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints <u>solely</u> on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

*Polaski v. Heckler, 739 F.2d at 1322 (emphasis in original).*

However, in addition to the requirement that the ALJ consider the Plaintiff's allegations

AO72A
(Rev. 8/82)

of pain, he also has a statutory duty to assess the credibility of plaintiff and other witnesses.

*Nelson v. Sullivan, 966 F.2d 363, 366 (8th Cir. 1992)*.  The ALJ may discredit subjective

complaints of pain inconsistent with the record as a whole.  *Ownbey v. Shalala, 5 F.3d 342, 344*

*(8th Cir. 1993)*.

On November 1, 2001, Plaintiff's treating pain management physician, Dr. M. Carl

Covey, performed a discogram[3] on Plaintiff's lumbar spine (T. 135-136).  The results of the

provocation were:

L5-S1  -  Was 10/10 quite concordant, obviously degenerative disc, 2cc injected.

L4-5  -  Again 10/10 concordant pain including left lower extremity pain.  It was even more degenerative pattern than L5-S1.  Three cc of solution used up to the normal pressure.

L3-4  -  Was a much less painful disc and looked to be fairly normal, although there was some leak back in the needle shaft.  It was only maybe 5/10 plus/minus concordant and 2 cc was used.

L2-3  -  A normal appearing disc, maybe 1/10, very non painful disc, and normal patter, only 1.5 cc to fill the disc.

The needles were removed.  Band-Aids were applied.  He was given Toradol 60 mg IM and taken to the recovery room.

IMPRESSION:
A patient with what appears to be two level internal disc derangement at L3-4

_____

[3]Discography, or discogram, is a diagnostic tool used to determine the structural integrity of an intervertebral disc (or discs) and if a particular disc is responsible for the patient's back pain. Provocative Discography is a form of discography that replicates the patient's 'discogenic' pain. The term discogenic is defined as a pain syndrome characterized by local or radicular pain cause by nerve root compression. The test is performed on an outpatient basis in a hospital or medical facility by either a radiologist or surgeon. Fluoroscopy, an imaging technique that projects an x-ray type picture onto a monitor, is used to guide the spinal needle into the suspect intervertebral disc. A radiopaque dye is then injected through the spinal needle into the nucleus (center) of the disc.
*http://www.spineuniverse.com/displayarticle.php/article247.html*

AO72A
(Rev. 8/82)

and L4-5.

(T. 136).

Immediately following the November 1, 2001 discography, Plaintiff underwent an MRI of the lumbar spine, post discogram, at Open MRI of Little Rock (T. 136, 184-185). The MRI report read as follows:

> IMPRESSION:
> ... At L4-L5, there is eccentric disk herniation, in addition to annular tear and leakage. This results in severe left foraminal stenosis. L5-S1 shows annular tears with posterior leakage and disk herniation, resulting in moderate to severe left foraminal narrowing.

(T. 184-185).

The ALJ's decision failed to address the findings of either of these objective medical tests.

Likewise, the ALJ failed to discuss the entirety of narcotic medications prescribed for Plaintiff during the relevant time period. Although the ALJ acknowledged Plaintiff's use of "narcotic medication" (T. 25), he did not adequately analyze the specific medications prescribed to Plaintiff. The medical records reflect that in addition to routine prescriptions for Lortab, other prescription pain medications were prescribed to Plaintiff, for use in conjunction with the Lortab. The additional narcotic medications prescribed with the Lortab include both Oxyir and Duragesic transdermal patches (T. 272, 276, 283, 288, 289, 145, 79, 89, 130, 136, 141, 146).

Hydrocodone bitartrate and acetaminophen are combined into tablet form and sold under the trademark name Lortab. Lortab is a medication indicated for the relief of moderate to moderately severe pain. Hydrocodone bitartrate is an opioid analgesic and antitussive. *Physicians Desk Reference*, pp. 3235-3237 (58th Edition 2004).

AO72A
(Rev. 8/82)

Plaintiff was also prescribed Oxyir, which is an oxycodone hydrochloride immediate release capsule indicated for the relief of moderate to moderately severe pain. This medication contains a semisynthetic narcotic with multiple actions qualitatively similar to those of morphine. The therapeutic value of oxycodone are analgesia and sedation. *Physicians Desk Reference*, pp. 2859-2860 (58th Edition 2004).

Duragesic (fentanyl transdermal system) is a transdermal system providing continuous systemic delivery of fentayl, a potent opioid analgesic, for 72 hours. Duragesic is indicated for the management of chronic pain in patients who require continuous opioid nalagesia for pain that cannot be managed by lesser means. Duragesic should not be used in the management of acute or postoperative pain because serious, or life-threatening hypoventilation could result. *Physicians Desk Reference*, pp. 1751-1755 (58th Edition 2004).

Although the ALJ's decision states the following:

> The undersigned has also considered all medical opinions, or statements from acceptable medical sources which reflect judgments about the nature and severity of the impairments and resulting limitations (20 CFR §§ 404.1527 and Social Security Rulings 96-2p and 96-6p).

(T. 25).

This statement is not sufficient to satisfy the ALJ's duty under *Polaski*. The ALJ certainly should have discussed all of these medications and the effects, if any, same would have on Plaintiff's ability to perform substantial gainful activity. His failure to do so was error.

In evaluating the factors of *Polaski*, the ALJ must "discuss" the factors in the hearing decision. *Herbert v. Heckler, 783 F.2d 128, 131 (8th Cir.1986)(citing Polaski v. Heckler, 751 F.2d 943, 9580-950 (8th Cir.1984))*.

-8-

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." *Polaski v. Heckler*, 739 F.2d at 1322.

To determine whether the ALJ properly applied the factors listed in *Polaski*, we must determine whether the ALJ took into account all the relevant evidence, and whether that evidence contradicted the claimant's own testimony so that the ALJ could discount the testimony for lack of credibility. *Benskin v. Bowen*, 830 F.2d 878, 882 (8th Cir.1987). The ALJ's credibility assessment must be based on substantial evidence. *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir.1988).

In this case, with respect to subjective allegations and nonexertional limitations, the ALJ found plaintiff not entirely credible (T. 30 ). Implicit in the ALJ's task of making a credibility determination is the requirement that he "discuss" the *Polaski* factors. *Herbert v. Heckler*, 783 F.2d at 130 (the *Polaski* cases and the Social Security Disability Reform Act of 1984 require that the Commissioner set forth the inconsistencies in the objective medical evidence presented and discuss the factors set forth in the *Polaski* settlement when making "credibility" determinations concerning claimant's subjective complaints of pain).

Here, the ALJ fails to meaningfully examine the dosage and side effects of Plaitniff's medication. *Polaski v. Heckler*, 739 F.2d at 1321-22. The ALJ must discuss and point out the inconsistencies in the record, in order to make a credibility determination. *Cline v. Sullivan, 939 F.2d 560, 565 (8th Cir.1991)* ("it is not enough that inconsistencies may be said to exist, the ALJ must set forth the inconsistencies in the evidence presented and discuss the factors set forth

-9-

in *Polaski* when making credibility determinations"); *Herbert v. Heckler, 783 F.2d at 131* (even though evidence with respect to *Polaski* factors is in the record, those factors must be discussed in the decision).

The ALJ's failure to consider the objective medical evidence of the discogram and MRI, as well as his failure to adequately consider Plaintiff's prescription medications of Lortab, Oxyir and Duragesic constitute error.

**Conclusion:**

Accordingly, we conclude that the decision of the Commissioner denying benefits to the Plaintiff, is not supported by substantial evidence and should be reversed. This matter should be remanded for proceedings consistent with this decision.

ENTERED this 24th day of August, 2005.

/s/Bobby E. Shepherd
Honorable Bobby E. Shepherd
United States Magistrate Judge

-10-

**AO72A**
**(Rev. 8/82)**

-12-